**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| NO LABELS, | No. 1:23-cv-01384 (D. Del.) |
| Plaintiff, | Case: _____ |
| | Assigned To: _____ |
| v. | Assign. Date: August 6, 2024 |
| | Description: Civil Misc. |
| NOLABELS.COM INC., | |
| Defendant. | |

**NON-PARTIES THIRD WAY, JON COWAN, MATTHEW BENNETT, AND EMILY CAIN'S MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO QUASH OR MODIFY SUBPOENAS**

**TABLE OF CONTENTS**

**Page**

INTRODUCTION .............................................................................................................. 1

FACTUAL BACKGROUND ............................................................................................ 2

      A.    No Labels' Campaign Against Third Way ................................................... 2

      B.    No Labels' Trademark-Infringement Suit And These Subpoenas ............. 4

LEGAL STANDARD ....................................................................................................... 6

STATEMENT OF JURISDICTION ................................................................................. 8

ARGUMENT .................................................................................................................... 8

   I.    The Information Sought Is Not Relevant. ................................................... 8

   II.    No Labels' Discovery Requests Violate The First Amendment and Present An Undue Burden. ...................................................................................... 11

      A.    Discovery Into Third Way's Political Activities Would Infringe Movants' First Amendment Rights. ........................................................................ 11

      B.    No Labels' Discovery Requests Are Unduly Burdensome. ..................... 15

   III.    At A Minimum, The Court Should Limit Discovery To Topic 1 And To A Relevant Time Period. ........................................................................................... 17

CONCLUSION ............................................................................................................... 18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AFL-CIO v. FEC,*
    333 F.3d 168 (D.C. Cir. 2003) ................................................................................13

*Alexander v. FBI,*
    186 F.R.D. 12 (D.D.C. 1998) ................................................................................10

*Alexander v. FBI,*
    194 F.R.D. 299 (D.D.C. 2000) ................................................................................8

*Am. Soc'y for Testing & Materials v. Public.Resource.Org, Inc.,*
    896 F.3d 437 (D.C. Cir. 2018) ................................................................................8

*Arizona Free Enterprise Club's Freedom Club PAC v. Bennett,*
    564 U.S. 721 (2011) ................................................................................12

*BuzzFeed, Inc. v. U.S. Dep't of Justice,*
    318 F. Supp. 3d 347 (D.D.C. 2018) ................................................................7, 15

*Cruise Connections Charter Mgmt. 1, LP v. Att'y Gen. of Canada,*
    2014 WL 12778302 (D.D.C. Oct. 1, 2014) ................................................................17

*Darling v. Girard,*
    2015 WL 13898434 (D.D.C. July 20, 2015) ................................................................8

*Diamond Servs. Mgmt. Co., LLC v. Knobbe, Martens, Olson & Bear, LLP,*
    339 F.R.D. 334 (D.D.C. 2021) ................................................................................10

*Flatow v. Islamic Republic of Iran,*
    196 F.R.D. 203 (D.D.C. 2000), *vacated in part and aff'd in part on other
    grounds,* 305 F.3d 1249 (D.C. Cir. 2002) ................................................................15

*Grandbouche v. Clancy,*
    825 F.2d 1463 (10th Cir.1987) ................................................................................12

*Gym Door Repairs, Inc. v. Young Equipment Sales, Inc.,*
    206 F. Supp. 3d 869 (S.D.N.Y. 2016) ................................................................10

*Int'l Action Ctr. v. United States,*
    207 F.R.D. 1 (D.D.C. 2002) ................................................................................11

*IPOC Int'l Growth Fund Ltd. v. Diligence, LLC,*
    2007 WL 9812839 (D.D.C. Apr. 6, 2007) ................................................................18

*In re Kincaid,*
    2023 WL 6459801 (D.D.C. Oct. 4, 2023) ................................................................7, 12, 14

## TABLE OF AUTHORITIES
### (Continued)

**Page(s)**

*McBride v. Merrell Dow & Pharms. Inc.*,
    717 F.2d 1460 (D.C. Cir. 1983) ...................................................................................11

*Moon v. SCP Pool Corp.*,
    232 F.R.D. 633 (C.D. Cal. 2005) ..................................................................................16

*In re Motion to Compel Compliance with Subpoena Direct to Dep't of Veterans
    Affairs*,
    257 F.R.D. 12 (D.D.C. 2009)..............................................................................11, 17

*In re Non-Party Subpoena to Ctr. for Study of Soc. Pol'y*,
    659 F. Supp. 3d 54 (D.D.C. 2023) .........................................................................15, 16

*Perry v. Schwarzenegger*,
    591 F.3d 1126 (9th Cir. 2009) .............................................................12, 13, 14, 17

*Republican Nat'l Comm. v. Pelosi*,
    602 F. Supp. 3d 1 (D.D.C. 2022), *vacated as moot*, 2022 WL 4349778 (D.C.
    Cir. Sept. 16, 2022) ..................................................................................................13

*In re Subpoenas Served on Am. Acad. of Pediatrics*,
    2023 WL 2351729 (D.D.C. Mar. 3, 2023).............................................................7, 12, 14

*Washington v. Thurgood Marshall Academy*,
    230 F.R.D. 18 (D.D.C. 2005)......................................................................................7

*Watts v. SEC*,
    482 F.3d 501 (D.C. Cir. 2007) .................................................................................7, 15

*Westmoreland v. CBS, Inc.*,
    584 F. Supp. 1206 (D.D.C. 1984) .............................................................................10

*Xereas v. Heiss*,
    933 F. Supp. 2d 1 (D.D.C. 2013) ...............................................................................9

**Statutes**

18 U.S.C. § 1951 ...............................................................................................................3

**Rules**

Fed. R. Civ. P. 26(b)(1)...........................................................................................7, 8, 15

Fed. R. Civ. P. 26(b)(2)(C) ........................................................................................15

Fed. R. Civ. P. 26(c) ..............................................................................................8, 11

**TABLE OF AUTHORITIES**
**(Continued)**

**Page(s)**

Fed. R. Civ. P. 45(d) ...................................................................................................16

Fed. R. Civ. P. 45(d)(3).............................................................................................7, 11

Third Way, Jon Cowan, Matt Bennett, and Emily Cain (collectively, "Movants") respectfully request an order from this Court quashing or modifying the June 7, 2024 and July 10, 2024, subpoenas issued by No Labels in *No Labels v. NoLabels.com Inc.*, No. 1:23-cv-1384-GBW (D. Del.), pursuant to Federal Rule of Civil Procedure 45(d)(3) and the First Amendment to the United States Constitution.  Alternatively, Movants respectfully request that this Court enter a protective order pursuant to Federal Rule of Civil Procedure 26(c).

## INTRODUCTION

No Labels seeks to harness trademark-infringement litigation over a spoof website to obtain sensitive information from a non-party and rival political organization, Third Way, that has nothing to do with the trademark suit or the website.  And this is not No Labels' first attempt to use the legal process to impede Third Way's advocacy: No Labels has previously urged the U.S. Department of Justice to investigate and criminally prosecute Third Way for publicly opposing No Labels' now-failed presidential "unity ticket."  Unsuccessful in that maneuver, No Labels now aims to use unrelated trademark-infringement litigation—which alleges that an entity called NoLabels.com Inc. unlawfully registered the nolabels.com website domain—to obtain *all* information about Third Way's activities related to No Labels and No Labels' failed campaign.

No Labels is free to disagree with Third Way, but the discovery rules and the First Amendment prohibit it from using third-party civil discovery in a trademark suit to advance its political grievances.  Under Federal Rule of Civil Procedure 45(d), a subpoena should be quashed or modified where the discovery sought is irrelevant to the underlying action or where the discovery would impose an undue burden.  And under the First Amendment, a discovery request cannot proceed where it deters political activity without sufficient justification.

Here, the document and deposition discovery sought against Third Way and three individuals affiliated with the organization lacks relevance, would chill Movants' First Amendment activity, and presents an undue burden.  It is irrelevant because the underlying trademark-infringement action has no connection with Movants, who played no role in the creation of the nolabels.com domain.  It threatens Third Way's First Amendment rights because it seeks, without justification, documents that would divulge the strategies Third Way employed in opposing No Labels' presidential ticket.  And it is unduly burdensome because it demands information far broader than needed for No Labels' trademark suit.  Indeed, No Labels already knows who is behind the nolabels.com website—and knows that those individuals are not affiliated with Third Way.

Accordingly, this Court should enter an order quashing No Labels' subpoenas directed at Movants.  At a minimum, the Court should enter an order limiting discovery only to documents concerning NoLabels.com Inc. and the creation of the nolabels.com website, and to a window of time that ends when the underlying lawsuit was filed.

## FACTUAL BACKGROUND[1]

### A.    No Labels' Campaign Against Third Way

No Labels and Third Way are both 501(c)(4) nonprofit organizations that engage in political advocacy.  Ex. 1 at ¶ 6 (ECF No. 1); Declaration of Matthew Bennett ("Bennett Decl.") at ¶ 4.  In advance of the 2024 presidential election, No Labels sought to "gain access in every state for a potential Unity Ticket . . . that would offer an independent presidential and vice-presidential candidate option for voters unsatisfied with the choices available to them."  Ex. 1 at

---

[1] Unless otherwise indicated, all exhibits are to the Declaration of Natasha W. Teleanu ("Teleanu Decl."), all ECF citations are to *No Labels v. NoLabels.com Inc.*, No. 1:23-cv-1384-GBW (D. Del.), all emphasis is added, and all internal quotation marks are omitted.

¶ 13.  Third Way publicly opposed No Labels' efforts, repeatedly describing No Labels' proposed "unity ticket" as a "spoiler that re-elects [Donald] Trump," a candidate whom Third Way—as a national think tank that champions modern center-left ideas—opposes.  Bennett Decl. at ¶ 4; Bennett Ex. A (March 2024 Third Way Memo).  Some of Third Way's advocacy on this topic was authored by Matt Bennett, a co-founder and executive vice president of the organization, and by Emily Cain, a strategic advisor for Third Way who works as an independent consultant.  Bennet Decl. at ¶ 4; Declaration of Emily Cain ("Cain Decl.") at ¶ 4.

As its "unity ticket" efforts were collapsing, No Labels sought to lay blame on Third Way.  And, rather than persuading the public, it sought to use the legal process to retaliate against and harass Third Way for opposing No Labels' presidential efforts.  In a January 11, 2024 letter to the United States Department of Justice, No Labels attacked Third Way and Bennett for being part of a "conspiracy" to prevent the "unity ticket."  Bennett Decl. Ex. B at 2 (No Labels Letter to DOJ).  No Labels further suggested that Third Way's advocacy "violates the federal extortion statute, 18 U.S.C. § 1951," "represents a RICO predicate act," and otherwise "contravened a vast array of federal criminal statutes."  *Id.* at 2, 6.  It requested that the Justice Department "investigate this matter fully and take all appropriate measures, including whatever civil or criminal legal steps may be necessary."  *Id.* at 8.  Third Way released a statement describing No Labels' allegations as "baseless and frivolous."  Bennett Decl. at ¶ 5; Bennett Ex. C (January 2024 Third Way Statement).  The statement further committed that Third Way "will continue to make the case publicly and privately that No Labels risks putting Donald Trump back in power if they go forward."  Bennett Ex. C.

### B.    No Labels' Trademark-Infringement Suit And These Subpoenas

The underlying litigation here has nothing to do with No Labels' grievances with Third Way.  Rather, it arises from No Labels' apparent failure to register nolabels.com (as opposed to nolabels.org, No Labels' actual website) as a domain name.  An entity known as NoLabels.com Inc., a Delaware corporation, registered the nolabels.com domain and launched a website that No Labels alleges is "intentionally designed to mimic the look and layout of the No Labels Website."  Ex. 1 at ¶¶ 4, 17, 19.

In December 2023, No Labels sued NoLabels.com Inc. in the District of Delaware.  *See* Ex. 1 at 1.  No Labels' complaint includes three counts.  Count 1 charges that NoLabels.com Inc. is cybersquatting, in violation of 15 U.S.C. § 1125(d).  Count 2 charges that NoLabels.com Inc. is infringing No Labels' trademark through a false designation of origin, in violation of 15 U.S.C. § 1125(a).  And Count 3 charges that NoLabels.com Inc. is infringing No Labels' trademark in violation of 15 U.S.C. § 1114(1).  NoLabels.com Inc. has served an answer denying No Labels' allegations and seeking a declaratory judgment that No Labels' trademark is invalid. Ex. 2 (ECF No. 36).  The court has entered a temporary restraining order and preliminary injunction forbidding NoLabels.com Inc. from using the No Labels trademark during the pendency of the action.  Exs. 3 and 4 (ECF Nos. 26, 79).

Third Way, its president Jon Cowan, its co-founder and executive vice president Matt Bennett, and one of its strategic advisors Emily Cain have nothing to do with No Labels and NoLabels.com Inc.'s website dispute.  There is no allegation in No Labels' complaint connecting Third Way and the individuals to the website dispute.  *See generally* Ex. 1. And Cowan, Bennett and Cain affirm that Third Way and the individual movants did not participate in the creation or maintenance of NoLabels.com.  Declaration of Jon Cowan ("Cowan Decl.") at ¶¶ 9, 11 ; Bennett

Decl. at ¶¶ 10, 12 ; Cain Decl. at ¶ 6.  Indeed, Cowan and Bennett did not even know about the existence of NoLabels.com until the underlying trademark lawsuit was filed. Cowan Decl. at ¶¶ 6-7; Bennett Decl. at ¶¶ 7-8.  And while Cain does not recall if she knew about the existence of NoLabels.com before or after the underlying lawsuit was filed, she did not know about it until it was already in existence—and, after briefly visiting the website, she "took no action or otherwise did anything in relation to visiting the website."  Cain Decl. at ¶ 7.

Nonetheless, on June 7, No Labels noticed its intent to serve extensive third-party discovery on Third Way, Bennett, and Cain, and on July 10, noticed its intent to serve an additional subpoena on Cowan.  Ex. 5 at 1 (ECF No. 95);  Ex. 9 at 1 (ECF No. 101).[2]  The subpoenas sought documents from Third Way and the individuals, as well as depositions of the individuals.  Ex. 6 at 2 (ECF No. 95-1); Ex. 7 at 2 (ECF No. 95-2); Ex. 8 at 2 (ECF No. 95-4); Ex. 10 at 2 (ECF No. 101-1).  The subpoenas identify Washington, DC as the place of compliance.  *Id.*  Movants were either personally served with the subpoenas, or counsel accepted subpoenas on Movants' behalf.

Most of the information sought in the subpoenas has nothing to do with No Labels' website dispute.  No Labels seeks, for example, all "documents and communications . . . concerning Plaintiff No Labels and/or nolabels.org"—a request that would capture all materials relating to Third Way's political advocacy opposing No Labels' "unity ticket."  *E.g.*, Ex. 6 at 7. It also seeks documents and communications relating to all meetings Movants had concerning No Labels, all communications "concerning the payment of money . . . related to No Labels," and all communications with certain individuals and advocacy groups "relating to No Labels."

---

[2] No Labels also sought discovery against Dmitri Mehlhorn, who is not a movant here, nor affiliated with Third Way.  Ex. 5 at 1.

*E.g.*, *id.*  Only the first request in the subpoenas—for "documents and communications" "concerning or with NoLabels.com Inc."—has a clear connection to the website dispute.  *E.g.*, *id.*

During negotiations over the scope of the subpoena, Third Way, Cowan, Bennett, and Cain offered to search for documents concerning NoLabels.com that existed prior to the initiation of the litigation.  Ex. 11 (N. Teleanu and M. Lytle Email Chain).  Movants further offered to provide declarations from the individuals attesting that they had no involvement in the NoLabels.com website until after No Labels initiated its lawsuit against NoLabels.com.  Teleanu Decl. ¶ 15.  No Labels, however, declined to accept this good-faith proposal.  Instead, it demanded that Third Way, Cowan, Bennett, and Cain produce "documents that relate to attempts to weaken No Labels' brand, and create false associations and/or perceptions regarding the NO LABELS mark, including by disseminating misleading or false information about No Labels, its leadership, and confusing voters about No Labels' stances."  Ex. 11.  No Labels demanded that Third Way and the individual movants produce all documents responsive to search terms like "right," "trump," "MAGA," "extreme," "problematic," and "radical" in proximity with "No Labels" or "NL," regardless of whether the documents captured by those terms had any relevance to the website dispute.  Ex. 11.

## LEGAL STANDARD

Federal Rule of Civil Procedure 45(d)(3)(A) provides that, "[o]n timely motion, the court for the district where compliance is required must quash or modify a subpoena that," *inter alia*, "subjects a person to undue burden."  And Federal Rule of Civil Procedure 26(c) provides that "[a] party or any person from whom discovery is sought may move for a protective order in the court where the action is pending—or as an alternative on matters relating to a deposition, in the

court for the district where the deposition will be taken"—and that the court "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."

The standard under both rules is the same.  *See Washington v. Thurgood Marshall Academy*, 230 F.R.D. 18, 22 (D.D.C. 2005).  The first question is "whether the discovery sought is relevant to a party's claim or defense in the underlying litigation."  *BuzzFeed, Inc. v. U.S. Dep't of Justice*, 318 F. Supp. 3d 347, 356 (D.D.C. 2018).  If the information is relevant, then "the court must next assess whether compliance would impose an undue burden."  *Id.* at 358.  A "number of factors" are "potentially relevant to the question of undue burden," including "whether the discovery sought is 'proportional to the needs of the case.'"  *Id.* (quoting Fed. R. Civ. P. 26(b)(1) and *Watts v. SEC*, 482 F.3d 501, 509 (D.C. Cir. 2007)).

"[E]valuating a First Amendment defense in the discovery context requires a careful balancing of First Amendment interests against the need for the requested information."  *In re Subpoenas Served on Am. Acad. of Pediatrics*, 2023 WL 2351729, at *1 (D.D.C. Mar. 3, 2023) (*In re AAP*).  "First, the movant must demonstrate that it has a cognizable First Amendment interest."  *In re Kincaid*, 2023 WL 6459801, at *4 (D.D.C. Oct. 4, 2023).  "If the movant surpasses this threshold, then the Court balances the movant's interest against the other party's interest in obtaining information."  *Id.*  At that stage, "[c]ourts must consider (1) whether the requested information goes to the 'heart of the lawsuit' and (2) whether the party seeking the discovery sought the information through alternative sources or otherwise made reasonable attempts to obtain the information elsewhere."  *In re AAP*, 2023 WL 2351729, at *1.

## STATEMENT OF JURISDICTION

The Court has jurisdiction over this motion because "the district where compliance is required" is this District.  Fed. R. Civ. P. 45(d)(3); Ex. 6 at 2; Ex. 7 at 2; Ex. 8 at 2; Ex. 10 at 2 (identifying Washington, DC as the place of compliance); *see Darling v. Girard*, 2015 WL 13898434, at *1 n.1 (D.D.C. July 20, 2015).  Parties "from whom discovery is sought may move for a protective order . . . on matters relating to a deposition, in the court for the district where the deposition will be taken."  Fed. R. Civ. P.  26(c).

## ARGUMENT

The Court should quash No Labels' irrelevant and overbroad subpoenas—or, alternatively, should modify the subpoenas to include only document requests relating to the alleged trademark infringement at issue in the underlying case.  No Labels cannot show that obtaining discovery against Third Way and its affiliated individuals, who have no connection with the trademark dispute, is relevant to that litigation.  And even if it could, the information demanded includes documents on topics of public concern that fail the First Amendment balancing inquiry and are disproportionate to the needs of the trademark action.

## I.     The Information Sought Is Not Relevant.

No Labels' discovery demands fail at the threshold because they have no relationship to the trademark-infringement action in which the discovery is sought.  As the party serving discovery, No Labels "bears the burden of establishing the relevance of [its] request."  *Alexander v. FBI*, 194 F.R.D. 299, 304 (D.D.C. 2000).

No Labels cannot satisfy its burden to show that any information in Third Way, Cowan, Bennett, or Cain's possession is relevant to "any party's claim or defense."  Fed. R. Civ. P. 26(b)(1).  No Labels and NoLabels.com Inc. are litigating a trademark and cybersquatting dispute.  The core questions in their case are whether No Labels owns a valid trademark and

whether NoLabels.com Inc. has infringed that mark.  *See, e.g.*, *Am. Soc'y for Testing & Materials v. Public.Resource.Org, Inc.*, 896 F.3d 437, 456 (D.C. Cir. 2018) (elements for trademark infringement); *Xereas v. Heiss*, 933 F. Supp. 2d 1, 14 (D.D.C. 2013) (elements for cybersquatting).  Those questions have nothing to do with Third Way, Cowan, Bennett, or Cain.

The fact that Third Way has nothing to do with this suit is apparent from the face of No Labels' complaint.  The complaint does not mention Third Way, Cowan, Bennett, or Cain.  It contains no allegations (or even insinuations) that Third Way or the individuals were in any way involved in the creation of NoLabels.com Inc. or the registration of the nolabels.com domain.  Indeed, there is nothing in the complaint that provides any basis to find No Labels' discovery demands relevant.

If more were needed, Cowan and Bennett have vouched—on their own behalf and on behalf of Third Way—that they have no information relevant to the suit, and that they did not even know about NoLabels.com until after No Labels filed its complaint in the Delaware action.  Cain, too, has vouched that she has no information relevant to the suit, and that she—at most— was possibly briefly aware of NoLabels.com before the Delaware lawsuit was filed.  Cain Decl. at ¶ 7.  Cowan has filed a declaration, attached to this motion, stating that he was unaware of NoLabels.com until after the Delaware lawsuit was filed.  Cowan Decl. at ¶¶ 6-7.  Bennett has filed a declaration, attached to this motion, stating  the same.  Bennett Decl. at ¶¶ 7-8.  Cain's declaration further states that she "took no action or otherwise did anything in response to visiting the website," and that she had no involvement with it. Cain Decl. at ¶¶ 6-7.  Those sworn statements (which Third Way offered to provide as part of its meet-and-confer efforts to obviate the need for this motion) put to bed any argument that Movants possess relevant information.

In meet-and-confer discussions, No Labels informed Movants' counsel that they are entitled to seek discovery against Third Way because "evidence" "suggests that certain non-parties, potentially including" Third Way may be liable for contributory infringement by having intentionally induced NoLabels.com Inc. to commit trademark infringement.  Ex. 11.  To advance such a contributory-infringement theory, No Labels would be required to show that Third Way was aware of and encouraged NoLabels.com Inc.'s underlying infringing conduct. *Gym Door Repairs, Inc. v. Young Equipment Sales, Inc.*, 206 F. Supp. 3d 869, 905 (S.D.N.Y. 2016) ("Intentional inducement requires specific acts undertaken with knowledge of infringing behavior and with intent to cause infringement.").  But No Labels has not provided any such evidence, despite Movants requesting it.  And again, the declarations of the individual Movants squarely rebut this allegation, stating that Cowan and Bennett were not aware of NoLabels.com prior to the filing of the underlying lawsuit, and that while Cain possibly was aware of the website prior to that point, she took no actions—much less encouraged any underlying infringing conduct—after visiting the site.  Cowan Decl. at ¶¶ 6-7; Bennett Decl. at ¶¶ 7-8; Cain Decl. at ¶¶ 6-7.

Without contradictory evidence, No Labels should not be permitted to succeed in its fishing expedition.  Nor can No Labels use third-party discovery in a website infringement action to attempt to procure evidence to support some sprawling and unrelated as-yet-unfiled litigation against Third Way.  *Westmoreland v. CBS, Inc.*, 584 F. Supp. 1206, 1213 (D.D.C. 1984) ("A court should deny a discovery request when its purpose ... is to gather information for use in proceedings other than the pending suit.").  "While the standard of relevancy in discovery is a liberal one, it is not so liberal as to allow a party to roam in shadow zones of relevancy and to explore matter which does not presently appear germane on the theory that it might conceivably

become so." *Alexander v. FBI*, 186 F.R.D. 12, 19 (D.D.C. 1998) (alteration adopted); *see*

*Diamond Servs. Mgmt. Co., LLC v. Knobbe, Martens, Olson & Bear, LLP*, 339 F.R.D. 334, 340

(D.D.C. 2021) ("Discovery is not intended to be a fishing expedition, but rather is meant to allow

the parties to flesh out allegations for which they initially have at least a modicum of objective

support." (alteration adopted)).  Thus, there is a "crucial distinction between permitting a

plaintiff to 'flesh out a pattern of facts already known' and the illegitimacy of permitting

discovery against a third party premised on an unfounded suspicion that, for example, the third

party had" taken unlawful action.  *In re Motion to Compel Compliance with Subpoena Direct to*

*Dep't of Veterans Affairs*, 257 F.R.D. 12, 17 (D.D.C. 2009) (*In re Veterans Affairs*).  Here, No

Labels has never substantiated its baseless assertion (contradicted by Movants' sworn

declarations) that Third Way or the individual movants were remotely involved in and

encouraged NoLabels.com Inc.'s alleged infringement.  Thus, No Labels' "unfounded suspicion"

does not establish relevance.  *Id*.

## II.    No Labels' Discovery Requests Violate The First Amendment and Present An Undue Burden.

Even if No Labels' requests were relevant, discovery would still not be appropriate

because the requests fail the First Amendment balancing inquiry as applied to Third Way's

internal political communications.  Additionally, No Labels' requests fail the inquiry set out

under the Federal Rules because they would impose an "undue burden" on Third Way, Cowan,

Bennett, and Cain.  Fed. R. Civ. P. 45(d)(3); *see* Fed. R. Civ. P. 26(c).

### A.    Discovery Into Third Way's Political Activities Would Infringe Movants' First Amendment Rights.

The "disclosure of information protected by the First Amendment" raises particular

discovery concerns.  *Int'l Action Ctr. v. United States*, 207 F.R.D. 1, 4 (D.D.C. 2002); *see*

*McBride v. Merrell Dow & Pharms. Inc.*, 717 F.2d 1460, 1467 (D.C. Cir. 1983) ("Unless

person[s] . . . desiring to exercise their First Amendment rights are assured freedom from the harassment of lawsuits, they will tend to become self-censors.").  Hence, this Court has established a two-step framework to adjudicate a movant's assertion of a First Amendment privilege against discovery.   At the first step, the movant must demonstrate "that it has a cognizable First Amendment interest." *In re Kincaid*, 2023 WL 6459801, at *4.  At the second step, "the Court balances the movant's interest against the other party's interest in obtaining information." *Id.*  The two key questions in that balancing inquiry are whether the requested information "goes to the 'heart of the lawsuit'" and whether "the party seeking discovery sought the information through alternative sources or otherwise made reasonable attempts to obtain the information elsewhere." *Id.* (quoting *In re AAP*, 2023 WL 2351729, at *1).[3]

No Labels seeks documents and deposition testimony from Movants on a number of topics that go far beyond the trademark action.  The discovery requests include "[a]ll documents and communications . . . concerning Plaintiff No Labels and/or nolabels.org" or "related to any in-person or virtual meetings concerning No Labels," as well as "[a]ll Google Docs, Google Sheets, and/or Google Slides, in native format, concerning No Labels." *E.g.*, Ex. 6 at 7; Ex. 10 at 7-8.  In plain English, No Labels demands that Third Way and the individual movants turn over all information in their possession related to No Labels—regardless of whether that information has any connection to the website-based dispute.

Third Way and the individual movants have a weighty First Amendment interest in protecting their internal political communications from disclosure to No Labels.  Because

---

[3] The First Amendment "applies to discovery orders 'even if all of the litigants are private entities.'" *Perry v. Schwarzenegger*, 591 F.3d 1126, 1140 n.5 (9th Cir. 2009) (quoting *Grandbouche v. Clancy*, 825 F.2d 1463, 1466 (10th Cir.1987)).  This Court's recent decision in *In re Kincaid* is an example.  *See* 2023 WL 6459801, at *1 (describing dispute between the "National Republican Redistricting Trust" and "the League of United Latin American Citizens").

"[d]iscussion of public issues and debate on the qualifications of candidates are integral to the operation of our system of government," the First Amendment "has its fullest and most urgent application to speech uttered during a campaign for political office." *Arizona Free Enterprise Club's Freedom Club PAC v. Bennett*, 564 U.S. 721, 734 (2011).  Thus, Third Way "has a First Amendment interest in keeping confidential its internal, strategic materials pertaining to how it organizes itself and conducts its affairs." *Republican Nat'l Comm. v. Pelosi*, 602 F. Supp. 3d 1, 33 (D.D.C. 2022), *vacated as moot*, 2022 WL 4349778 (D.C. Cir. Sept. 16, 2022); *see AFL-CIO v. FEC*, 333 F.3d 168, 170 (D.C. Cir. 2003) (noting "the substantial First Amendment interests implicated in releasing political groups' strategic documents and other internal materials").

Moreover, the "internal, strategic materials" that No Labels seeks to unearth lie at the heart of Third Way's political activity.  Third Way publicly and repeatedly opposed No Labels' proposed "unity ticket," including in communications authored by the individual movants.  *See supra* at 3.  Even after No Labels asked the Justice Department to investigate and potentially prosecute Third Way for its advocacy, Third Way committed that it would continue to "publicly and privately" make the case that No Labels' "unity ticket" was a mistake.  *See supra* at 3. Forcing Third Way to reveal its strategic efforts against No Labels' "unity ticket" to No Labels itself threatens to undermine and chill Third Way's advocacy.  *See Perry v. Schwarzenegger*, 591 F.3d 1126, 1142 (9th Cir. 2009) ("[D]isclosure of internal campaign information can have a deterrent effect on the free flow of information within campaigns.").  Indeed, No Labels' demand is the functional equivalent of the Democratic Party seeking discovery to obtain internal documents from the Republican Party, or vice versa.

Such an extraordinary request demands extraordinary justification.  But here, No Labels seeks to justify its discovery based on the flimsiest of reeds: a trademark infringement suit to

which Movants are not a party and that is based on conduct of which Movants have no knowledge. *See supra* at 9-10. The First Amendment "balancing inquiry" requires courts to consider "whether the requested information goes to the 'heart of the lawsuit.'" *In re Kincaid*, 2023 WL 6459801, at *4. So "the party seeking the discovery must show that the information sought is highly relevant to the claims or defenses in the litigation—a more demanding standard of relevance than that under Federal Rule of Civil Procedure 26(b)(1)." *Perry*, 591 F.3d at 1141. Even if No Labels' discovery demands have *any* relevance to its trademark-infringement suit, they fall far short of this standard. Discovery requests against non-parties not named in the complaint cannot go to the "heart of the lawsuit" or be "highly relevant to the claims and defenses in the litigation." *Id.*

Nor has No Labels made "reasonable attempts to obtain the information elsewhere," as the First Amendment inquiry requires. *In re AAP*, 2023 WL 2351729, at *1. No Labels' asserted basis for the discovery is that the demands will show that Third Way had a role in the allegedly unlawful trademark infringement. No Labels has not supported that assertion with evidence, and Movants confirm that the accusation is false. *See generally* Ex. 11; Cowan Decl.; Bennett Decl.; Cain Decl. And if No Labels believes that Movants acted in concert with the trademark-infringement defendant, there is an easy way for it to find out: it can propound discovery against the defendant entity on this topic, rather than going on a fishing expedition against Third Way. Since No Labels has already sought discovery from the defendant entity with requests concerning "the individual/entities 'who are either involved in the infringing conduct or who are undeniably relevant and important witnesses,'" No Labels should be able to fully obtain the information it seeks elsewhere, from NoLabels.com Inc. Ex. 12 at 5 (ECF No. 60).

14

All of these factors—the sensitive nature of the information sought, the attenuated relationship of that information to the suit, and the leap to discovery against Third Way— confirms that No Labels' real aim is unrelated to its website litigation.  For the second time, *see supra* at 3, No Labels seeks to use the legal system to retaliate against and harass Third Way for opposing No Labels' failed presidential bid.  The First Amendment stands in the way of that unfortunate tactic.

**B.      No Labels' Discovery Requests Are Unduly Burdensome.**

Even setting the First Amendment aside, No Labels' discovery demands fail the balancing test required by the Federal Rules.  "The Rule 45 'undue burden' standard requires district courts supervising discovery to be generally sensitive to the costs imposed on third parties." *Watts v. SEC*, 482 F.3d 501, 509 (D.C. Cir. 2007).  A key factor in whether the costs are excessive is whether "the discovery sought is 'proportional to the needs of the case,' taking into account 'the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.'" *BuzzFeed, Inc. v. U.S. Dep't of Justice*, 318 F. Supp. 3d 347, 358 (D.D.C. 2018) (quoting Fed. R. Civ. P. 26(b)(1), (2)(C)).

No Labels' sweeping discovery demands are plainly disproportionate to the needs of No Labels' trademark-infringement action.  "[T]he breadth of the document request" and "the time period covered by it" are key factors in deciding the burden of discovery.  *In re Non-Party Subpoena to Ctr. for Study of Soc. Pol'y*, 659 F. Supp. 3d 54, 60 (D.D.C. 2023) (*In re CSSP*) (quoting *Flatow v. Islamic Republic of Iran*, 196 F.R.D. 203, 206-07 (D.D.C. 2000), *vacated in part and aff'd in part on other grounds*, 305 F.3d 1249 (D.C. Cir. 2002)).  And these requests are

"overbroad on their face and exceed the bounds of fair discovery" in at least two respects (in addition to the issues discussed above).  *Id.*; *see supra* at 1.

*First*, although No Labels has subsequently narrowed the time period for the documents it seeks to the period between April 1, 2023 and April 15, 2024, it has no basis to seek documents following the initiation of the website infringement litigation, particularly given that the Delaware court entered the Temporary Restraining Order on December 15, 2023 and the Preliminary Injunction on February 22, 2024.  Exs. 3 and 4.  The Movants have confirmed that they had no involvement in the nolabels.com website, and so could not have played any role in the trademark infringement itself.  *See generally* Ex. 11; Cowan Decl.; Bennett Decl.; Cain Decl.

*Second*, and more fundamentally, No Labels "seek[s] information regarding *all*" issues surrounding No Labels, not only issues relating to the "litigation involving [NoLabels.com Inc.]."  *In re CSSP*, 659 F. Supp. 3d at 60 (quoting *Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 637-38 (C.D. Cal. 2005)); *see also id.* (citing Southern District of New York case for proposition "that subpoena that sought discovery of 'virtually every document' relating to the defendant that was generated or maintained by a non-party witness during the past ten years was overbroad and had to be quashed or modified").  No Labels' "narrowed" discovery requests, for example, seek documents and communications concerning or with seven individuals and organizations "relating to No Labels," not just NoLabels.com.  Ex. 11; e.g., Ex. 10 at 7.  And its proposed search terms include sweeping, facially unrelated terms such as "No Labels" within 10 words of, for example, "right," "trump," "MAGA," "extreme," "problematic," and "radical."  Ex. 11.  These requests go far beyond anything remotely connected to the underlying trademark dispute and confirm that No Labels' real aims are to chill Third Way's advocacy.

III.   **At A Minimum, The Court Should Limit Discovery To Topic 1 And To A Relevant Time Period.**

If the Court does not quash the subpoenas, it should "modify" them to eliminate No Labels' overbroad discovery into Third Way's political activities.  Fed. R. Civ. P. 45(d).  Under the Federal Rules, discovery should be "no more burdensome than necessary."  *Cruise Connections Charter Mgmt. 1, LP v. Att'y Gen. of Canada*, 2014 WL 12778302, at *1 (D.D.C. Oct. 1, 2014).  And under the First Amendment requests must be "carefully tailored to avoid unnecessary interference with protected activities."  *Perry*, 591 F.3d at 1141.

As described above, most of No Labels' discovery demands go far beyond the underlying trademark-infringement suit.  The only possible exception concerns the first noted document request in each subpoena: "All documents and communications, including electronic communications (e.g., emails, texts, instant messages, and messaging applications, such as Signal or WhatsApp, etc.), concerning or with NoLabels.com Inc., including but not limited to its formation, and/or nolabels.com and/or concerning acquisition of the NoLabels.com Domain and/or launching a website at the NoLabels.com Domain."  *E.g.*, Ex. 6 at 7.  In Movants' view, even that request is improper: No Labels has not carried its burden to show that Movants have any involvement with the controversy and is relying instead on "unfounded suspicion."  *In re Veterans Affairs*, 257 F.R.D. at 17.  And even that request is only possibly relevant within a time period that pre-dates the filing of the underlying lawsuit, because nothing that Movants did after No Labels initiated litigation against NoLabels.com Inc. could conceivably support No Labels' trademark-infringement claim.  But if the Court credits No Labels' unsubstantiated theory of contributory infringement, then limiting discovery only to that document demand and to a time period from a year before the lawsuit (December 2, 2022 to December 4, 2023) would give No Labels the information it needs.  At the same time, limiting discovery in that manner would go a

long way towards ensuring that Movants' First Amendment rights are not violated, and that

Movants are not unduly burdened, by No Labels' wide-ranging and irrelevant requests.[4]

## CONCLUSION

The Court should quash No Labels' subpoenas to Third Way, Jon Cowan, Matt Bennett,

and Emily Cain.  In the alternative, the Court should modify the subpoenas to limit them to the

first document request in each subpoena, and to documents created between December 2, 2022

and December 4, 2023.

Dated: August 6, 2024

O'MELVENY & MYERS LLP

By: _/s/ Joshua Revesz_____

Joshua Revesz
D.D.C. Bar No. 1616617
**O'MELVENY & MYERS LLP**
1625 Eye Street, NW
Washington, DC 20006
Telephone: (202) 383-5261
Facsimile: (202) 383-5414
Email: jrevesz@omm.com

Natasha W. Teleanu (*pro hac vice*
forthcoming)
**O'MELVENY & MYERS LLP**
1301 Avenue of the Americas, Suite 1700
New York, NY 10019
Telephone: (212) 326-4322
Facsimile: (212) 326-2061
Email: nteleanu@omm.com
*Counsel for Movants*

---

[4] The Court should not permit the individual movants to be deposed, given the total absence of evidence that deposing them would advance any of No Labels' claims or defenses.  If No Labels obtains documents that alter the calculus—and it will not, *see* Cowan Decl.; Bennett Decl.; Cain Decl.—it can reraise its deposition requests at that juncture.  *See IPOC Int'l Growth Fund Ltd. v. Diligence, LLC,* 2007 WL 9812839, at *4 (D.D.C. Apr. 6, 2007) (rejecting discovery demands "without prejudice to renew at a later date, based on a showing of relevance").